FILED

2012 SEP 12  PM 4: 09

CLERK U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIF.
LOS ANGELES
BY_____

1  Winston Reid
2  14361 Nordoff Street #B
3  Panorama City, CA  91402
4  Cell: 818-921-5089
5  Plaintiff, In Pro-per

6
7              UNITED STATES DISTRICT COURT
8              CENTRAL DISTRICT OF CALIFORNIA

**CV12-7863** *PA* (*SSx*)

9  WINSTON REID, as
10              Plaintiff,                )  **COMPLAINT FOR VIOLATION**
11                                        )  **OF FEDERAL LAWS**
12              vs.                       )
                                          )  1. DECLARATORY RELIEF
13  HOMEWARD RESIDENTIAL, F/K/A           )     TITLE [28 U.S.C.§§ 2201,2202]
    AMERICAN HOME SERVICING,              )  2. NEGLIGENCE
14  INC; WELLS FARGO BANK, N.A.;          )  3. QUASI CONTRACT
15  ASSET BACKED FUNDING                  )  4. VIOLATION OF
    CORPORATION ASSET BACKED              )     [12 U.S.C. § 2605]
16  CERTIFICATES, SERIES 2006-OPT-1;      )  5. VIOLATION OF TITLE
17  POWER DEFAULT SERVICES, INC.;         )     [15 U.S.C. §§ 1692 et seq.]
18  and DOES 1THROUGH 10                  )  6. VIOLATION OF CALIFORNIA
    INCLUSIVE,                            )     BUSINESS AND
19                                        )     PROFESSIONS
20              Defendants,               )     [CODE § 17200, et seq.]
                                          )  7.  ACCOUNTING
21  _____          )
22                                        )
23                                        )     **JURY TRIAL DEMANDED**
24                                        )
25                                        )

26
27
28

*First Amended Complaint - 1*



PAID

SEP 1 2 2012

Clerk, US District Court
CS-L1-457.2

# TABLE OF CONTENTS

**I.** JURISDICTION, VENUE ..................................................... 3

**II.** THE PARTIES.............................................................. 3

**III.** GENERAL FACTUAL ALLEGATIONS ........................................... 5

**IV.** INTRODUCTION............................................................ 6

**V.** THE FABRICATED ASSIGNMENT

     IS A FRAUDULENT LIEN.............................................. 14

**VI:** THE FABRICATED SUBSTITUTION OF TRUSTEE

     CONVEYED NO LEGAL AUTHORITY..................................... 16

**VII:** PLAINTIFF HAS SUFFERED................................................ 18

FIRST CAUSE OF ACTION-DECLARATORY RELIEF......................... 20

SECOND CAUSE OF ACTION-NEGLIGENCE................................. 22

THIRD CAUSE OF ACTION-QUASI CONTRACT.............................. 24

FOURTH CAUSE OF ACTION.............................................. 25

FIFTH CAUSE OF ACTION............................................... 26

SIXTH CAUSE OF ACTION............................................... 28

SEVENTH CAUSE OF ACTION............................................. 30

PRAYER FOR RELIEF................................................... 31

DEMAND FOR A JURY TRIAL............................................. 32

LIST OF EXHIBITS.................................................... 33

VERIFICATION AND ACKNOWLEDGEMENT................................ 34-35

# I.  JURISDICTION AND VENUE

1.  This Court has original jurisdiction over the claims in this action based on Title [28 U.S.C. §§ 1331, 1343, 2201, 2202], [Title 12 U.S.C § 2605], Title [15 U.S.C. § 1692] Title [42 U.S.C. § 1983] which confer original jurisdiction on federal district courts in suits to address the deprivation of rights secured by federal law.[1]

2.  This Court also has supplemental jurisdiction over the pendant state law claims because they form a part of the same case or controversy under Article III of the United States Constitution, pursuant to [Title 28 U.S.C. § 1367].

3.  This Court has original jurisdiction over the claims in this action based on [Title 28 U.S.C. § 1332] which confers original jurisdiction on federal district courts in suits between diverse citizens that involve an amount in controversy in excess of $75,000.00.

4.  The unlawful conduct, illegal practices, and acts complained of and alleged in this complaint were all committed in the Eastern District of California and involved real property located in the Eastern District of California. Therefore, venue properly lies in this District, pursuant to [Title 28 U.S.C. § 1391(b)].

# II. THE PARTIES

5.  PLAINTIFF, Winston Reid, at all times herein relevant to the complaint is the owner of real property commonly known as 14361 Nordoff Street #B, Panorama City, CA 91402. ("The Plaintiff")

///

///

---

[1] The Ninth Circuit instructs that in actions brought under 28 U.S.C. § 2201, district courts must first determine whether there is actual controversy within its jurisdiction by analyzing the factors enumerated in *Brillhart v. Excess Ins. Co.*, 316 U.S. 491 (1942). The *Brillhart* factors require the Court to (1) avoid needless determination of state law issues; (2) discourage litigants from filing declaratory actions as a means of forum shopping; and (3) avoid duplicative litigation. *Brillhart*, 316 U.S. at 495; *see also Schafer v. Citimortgage* No. CV 11-03919, 2011 WL 2437267 (C.D. Cal. June 15, 2011). As held by the court *Schafer*, this action does not involve a needless determination of state law issues, does not involve forum for shopping, and is not duplicative litigation.

6.  DEFENDANT, HOMEWARD RESIDENTIAL, F/K/A AMERICAN HOME SERVICING, INC., (HOMEWARD and/or AHMSI), as the initial alleged servicer of the alleged debt and the alleged creditor. *("Debt Collector & alleged Creditor of the alleged debt")*.

7. DEFENDANT, WELLS FARGO BANK, N.A. (WELLS), the Trustee of the ABFC 2006-OPT1 Trust and the Master Servicer and Custodian of the records of the Trust. *("Trustee")*, *("Custodian")*, *and ("Debt Collector and alleged beneficiary")*.

8.  DEFENDANT, ASSET BACKED FUNDING CORPORATION ASSET BACKED CERTIFICATES, SERIES 2006-OPT-1; dissolved and terminated entity *(the "Trust Fund")*, the issuer of the stock certificates in exchange for the Notes *("Issuing Entity, alleged beneficiary of the alleged debt")*.

9.  DEFENDANT, POWER DEFAULT SERVICES, INC. (POWER DEFAULT); a California Corporation; alleged Trustee of the Deed of Trust by Trustor. *("Debt Collector and alleged Trustee of the Deed of Trust")*.

10.  DOES 1 THROUGH 10 INCLUSIVE, Plaintiff does not know the true names and nature of defendants DOES 1 THROUGH 10 INCLUSIVE, and will amend the complaint when their true identities have been ascertained according to proof at trial.

11.  Whenever reference is made in this complaint to any act of any defendant(s), that allegation shall mean that such defendant acted individually and jointly with the other defendants.

12.  Any allegation about acts of any corporate or other business means that the corporation or other business did the acts alleged through officers, directors, employees, agents and /or representatives while they were acting within the actual or ostensible scope of their authority.

13.  At all relevant times, each defendant committed the acts, caused or directed others to commit the acts, or commit the acts alleged in this complaint. Additionally, some or all of the defendants acted as the agent of the other

1  defendants, and all of the defendants acted within the scope of their agency if

2  acting as an agent of the other.

3      14. At all relevant times, each defendant knew or realized that the other

4  defendants were engaging in or planned to engage in the violations of law alleged

5  in this complaint. Knowing or realizing that the other defendants were engaging in

6  or planning to engage in unlawful conduct, each defendant nevertheless facilitated

7  the commission of those unlawful acts. Each defendant intended to and did

8  encourage, facilitate, or assist in the commission of the unlawful acts, and thereby

9  aided and abetted the other defendants in the unlawful conduct.

## III: GENERAL FACTUAL ALLEGATIONS

11      15. The Plaintiff is informed and believes and alleges thereon that

12  defendants are third party strangers to his alleged debt and mortgage and have no

13  ownership interest entitling them to collect payment or declare a default. The

14  defendants have been engaged in an elaborate business practice to deceive,

15  misrepresent and have schemed to commit fraud and other acts of fraud against the

16  Plaintiff in order to collect on alleged debts, defendants have resorted to "papering

17  the file" by fabricating and filing an "Assignment of Deed of Trust" (Exhibit A),

18  employing individuals who have no authority or personal knowledge of the facts to

19  which they attest, and falsely representing to Plaintiff and the court that they have

20  the right to take the Plaintiff real property away. Not only is defendants' conduct a

21  *criminal violation* of California's mortgage Fraud Statute, Cal. Penal Code section

22  $532(f)(a)(4)^2$, and an affront to long-standing property laws, but their reliance on

23  fabricated and forged documents undermines the integrity of the judicial system.

24  Through this action, Plaintiff seeks to stop defendants fraudulent practices,

---

[2] Cal. Penal Code section 532(f)(a) provides that "a person commits mortgage fraud if, with the intent to defraud, the person does any of the following...(4) files or causes to be filed with the recorder of any county in connection with a mortgage loan transaction any document the person knows to contain a deliberate misstatement, misrepresentation, or omission."

discover the true holder in due course of the alleged debt evidenced by the "Promissory Note", and determine the status of defendants' claims.

## IV. INTRODUCTION

16.  During the high times of the mortgage refinancing and mortgage origination era 2002-2007 Wall Street investors looked to feed their insatiable and reckless greed for profit by tapping directly into the American dream of home ownership.  Mortgage lenders and investment banks aggressively lured the American people into the predatory loans with teaser interest rates and into purchasing homes with inflated appraisals[3] and under the promise that the booming real estate market would continue to boom.  Wall Street took the soon to be toxic loans and bundled them into *"Mortgage Backed Securities"* through a process known as *"Securitization"*.  These *"Securities"* were then sold to investors in the form of certificates, whereby the investors became the *"Certificateholders"* of the securities that were to be fed by the toxic loans.

17.  The Defendants and others became facilitators of this process by gathering large numbers of loans originated through other entities; the process is referred to as *"Pooling of Loans for Securitization"*, the Defendants pooled and placed these loans into *"Common Law Trusts"* and issued Certificates in exchange of Notes that were transferred into the *"Securitized Trust"*.  As the Certificates were traded into the marketplace the Wall Street players placed their bets and purchased contracts that would pay them in the case of default; they *shorted* the same market they were feeding.

---

[3] (Reuters) - A former home appraiser will receive $14.5 million as part of a whistleblower lawsuit that accused subprime lender Countrywide Financial of inflating appraisals on government-insured loans, his attorneys said Tuesday. Kyle Lagow's lawsuit sparked an investigation that culminated in a $1 billion settlement announced in February between Bank of America Corp (NYS:BAC - News) and the U.S. Justice Department over allegations of mortgage fraud at Countrywide, his attorneys said in a news release. Bank of America bought Countrywide in 2008.Lagow's suit was one of five whistleblower complaints that were folded into the $25 billion national mortgage settlement that state and federal officials reached with Bank of America and four other lenders the year. His suit was unsealed in February, but the amount of his settlement had not been disclosed. http://finance.yahoo.com/news/bank-america-whistleblower-receives-14-232819912

18. As the Wall Street entities rushed to *"Securitize"* the toxic loans and their anticipation of the massive number of defaults that were to come in the form of toxic assets, they also placed bets accordingly and bought exotic insurance products in the form of Credit Default Swaps[4]. The eventual meltdown of the market provided Wall Street with even more ridiculous profits.

19. As Wall Street that includes our defendants rushed to *"Securitize"* these loans they forgot their own rules and written compliance documents that are required to be followed by the letter of the law. Wall Street created a situation by which the "Mortgage Backed Securities" that were supposed to be backed by mortgages were actually not secured by anything except the number of dollars associated with the alleged transactions. These transactions were only reflected on the ledger books. Under the standard model for securitization the "Notes" were *supposed* to be sold and transferred into a trust pool "Securitized Trust" that holds the promissory notes as collateral on the securities bought by investors ("Certificateholders"). These "true sales" allow the original lenders to move the notes off their books, eliminating the need to maintain capital-adequacy reserves against defaults as required by the Federal Reserve. The purpose of securitizing collateral debt obligations was to provide a large supply of money for the lenders

---

[4] In 1995, JPMorgan credit the Credit Debt Swap (CDS). Essentially, a CDS is a form of insurance intended to protect the buyer of the policy in the case the borrower defaults on the loan. If the borrower defaults, the buyer of the CDS receives a large payout for the cash value of the defaulted loan. The main difference between traditional insurance policy and a CDS is that anyone can purchase a CDS, even those who have no direct "insurable interest" in the lender. CDSs' were instrumental during the housing bubble because once the banks ran out of creditworthy borrowers; they had to turn to un-creditworthy "subprime" borrowers. To avoid losses from defaults, the banks moved these risky mortgages off their books by bundling them into "securities" and selling them to investors. To induce investors to buy, these securities, the securities were then "insured" with credit default swaps. CDSs' allowed investors to bet against the average American to default on their mortgage with little risk. CDS insurance was especially attractive to investors who had knowledge of the subprime mortgage industry, since they knew the likelihood of default on those loans was much higher. Notably, AIG Insurance Company ("AIG"), an insurance carrier who owned a considerable market share of these CDS policies, was unable to make good on these policies after the housing bubble burst resulting in AIG seeking a government bailout. *See* Justin Fox, *Why the Government Wouldn't Let AIG Fail?* TIME Business (September 16, 2008) http://www.time.com/time/business/article/0.8599.1841699,00.html. Thus, in the end, it was the American taxpayer who bore the burden of these CDS.

1   for originating loans, and to provide investments to bond holders - which were
2   expected to be relatively safe.

3       20.  The formation of a proper and compliant Securitized Trust requires that
4   the Trust to be Governed by (1) the Pooling and Servicing Agreement; (2) the
5   Mortgage and Loan Agreement; (3) the 424B5 Prospectus; (4) the common law
6   trust rules of Delaware or New York, depending on its origin, and (5) Internal
7   Revenue Code section 860a through 860G better known as the Real Estate
8   Mortgage Investment Conduit ("REMIC") rules.

9       21.  One of the most essential aspects of the mortgage securitization process
10  is that the Trust must obtain and maintain good title to the mortgage loans
11  comprising the pool for that certificate offering.  This is necessary in order for the
12  Trustee of the purportedly Securitized Trust to be legally entitled to enforce the
13  mortgage loans in the case of default.  In addition to other required documentation
14  to complete the Collateral File of any given loan, two documents relating to each
15  mortgage loan must be validly transferred to the Trust as part of the securitization
16  process - the promissory note and the security instrument (Deed of Trust or
17  Mortgage Note).  In this case, on information and belief, neither document was
18  validly transferred within the required timelines as stipulated by the pooling and
19  servicing agreement.

20      22.  Here, Plaintiff alleges that the "true sale" never took place due to the
21  failure to follow the basic legal requirements for the transfer of a negotiable
22  instruments "FAS140" and thereby, defendants Wells Fargo did not acquire any
23  legal, equitable, and pecuniary interest in the Plaintiff's Note and Mortgage.  As a
24  result, thereof, Wells Fargo, which purports to be the Plaintiffs' creditor, actually
25  have no secured or unsecured right, title, or interest in the Plaintiffs Note and
26  Mortgage, and have no rights to collect mortgage payments, demand mortgage

27
28

1   payments, or report derogatorily against the Plaintiff's credit[5], or to default the
2   Plaintiff.

3       23.  The Plaintiff further allege that, on information and belief, the "ASSET
4   BACKED FUNDING CORPORATION ASSET BACKED CERTIFICATES,
5   SERIES 2006-OPT-1" ("hereinafter the ABFC 2006-OPT1") that purportedly
6   owns the Plaintiffs' Note and Mortgage has been dissolved and terminated due to
7   the disbursement and receipt of mortgage insurance payouts to "Option One" and
8   the certificateholders (including, but not limited to, Credit Default Swaps and other
9   mortgage insurance products) (See Exhibit B).  As a result of these mortgage
10  insurance payouts, Option One and all other defendants and Doe Defendants have
11  been paid in full on Plaintiff's debt obligation; In fact Option One was paid off
12  shortly after the closing documents were signed and recorded, hence no debt could
13  be assigned or designated to any other parties as claimed by the defendants.

14      24.  Despite the procedural requirements and the rules governing the proper
15  accounting procedures "FAS140" and Federal and State laws overseeing the
16  compliance of such transactions, the defendants attempt to take advantage of the
17  complex structured financial system to defraud the Plaintiffs as they have done
18  with millions of other homeowners from the inception of the meltdown.  Plaintiff
19  anticipates that the defendants and their counsel will seek a Court-Sanctioned
20  bailout by submitting a blatantly fabricated "Assignment" via a Request for
21  Judicial Notice, thereby committing fraud on the Court, and attempting to further
22  mislead Plaintiff that the defendants Wells Fargo Bank, and Power Default are
23  actual creditors, and are entitled to enforce their alleged obligation.

24  _____
25  [5]  Plaintiff's allegations are supported by the recent ruling of the Massachusetts Supreme Judicial Court in
    *U.S. Bank vs. Ibanez*, SJC-10694, 2011 WL 38071. In *Ibanez*, the court invalidated two foreclosure sales,
26  finding that the lower court did not err in concluding that the securitization documents submitted by U.S.
    Bank and Wells Fargo failed to demonstrate that they were the holders of the mortgages. The court
27  rejected the banks' argument that the mortgages were transferred via the applicable Pooling and Servicing
    Agreement and made clear that, to foreclose, the banks must prove a complete and unbroken chain of title
28  from origination to securitization trust in full compliance of the PSA, i.e. establish ownership of the
    mortgage.

25. The Plaintiff does not dispute that he owes an amount on his alleged mortgage obligation[6]. Rather, Plaintiff disputes the (character, amount, and the legal status), and seeks the Court's assistance in determining who the holder in due course is of his alleged Note and alleged Deed of Trust, and specifically what rights, if any, the defendants have to claim a secured or unsecured interest in the Plaintiff's alleged Note or alleged Mortgage.

26. The Plaintiff is informed and alleges that the defendants are not true beneficial parties in interest in the alleged debt and alleged mortgage. The defendants have assumed the alleged debts from a former leader in the mortgage business through a "credit sale" utilizing their credit as collateral[7]. The defendants are debt collectors under the meaning of "Debt Collector" as stipulated by the "F.D.C.P.A" 15 U.S.C. § 1692 (a)(6); the defendants are not the originators of the alleged debt and did not service the debt as the originators of the alleged debt; the defendants also fall within the meaning the "F.D.C.P.A" collecting alleged debts at the time that the alleged debts were in default.

27. On or about June 15, 2006, Plaintiff executed a promissory note ("Note") in favor of Option One Mortgage Corp., (hereinafter "Option One") obtaining an alleged loan on the property located at 14361 Nordoff Street #B, Panorama City, CA 91402.

28. The Plaintiff is informed and alleges that the alleged lender "Option One" did not tender the funds needed for the loan at the time the loan was

---

[6] However, simply because Plaintiff does not dispute this fact, the Court should not condone HOMEWARD, AHMSI, WELLS FARGO, and ABFC 2006-OPT1 fraudulent behavior and predatory mortgage collection practices and allow it to collect on money it was not owed. Simply put, the court should not allow the defendants to trample over 200 years of well-settled property laws just because the "owes somebody money."
[7] "It has been settled beyond controversy that a national bank, under Federal Law, being limited in its power and capacity, cannot lend its credit by nor guarantee the debt of another. All such contracts being entered into by its officers are ultra vires and not binding upon the corporation." It is unlawful for banks to loan their deposits

1  approved and funded.  The party that provided the fractional funds[8] (Lending

2  Credit[9]) for the deal was the "Depositor" Asset Backed Funding Corporation.

3      29.  The Plaintiff is informed and alleges that Option One never sold,

4  transferred , or granted their Note or Mortgage to the sponsor, depositor, WELLS,

5  HOMEWARD and/or AHMSI, and that WELLS, HOMEWARD AND/OR

6  AHMSI, and Power Default are merely a third - party stranger to the alleged debt

7  "the loan" transaction.  Furthermore, Plaintiff alleges that none of the defendants or

8  Doe defendants can demonstrate or document that Plaintiffs' Note was ever

9  endorsed, and transferred to WELLS, HOMEWARD and/or HOMEWARD

10  AND/OR AHMSI prior to the closing and termination of the alleged Trust.  In fact,

11  Plaintiff has requested multiple times for the defendants HOMEWARD AND/OR

12  AHMSI, WELLS and Power Default to verify and validate his debt.  Although this

13  information should be readily available to any mortgage servicer, HOMEWARD

14  AND/OR AHMSI has failed to provide any evidence to verify the owner and

15  amount of the Plaintiff's mortgage or validate the claim to the Plaintiffs' debt

16  obligation.

17      30.  The Plaintiff alleges that the parties involved in the alleged

18  securitization and alleged transfer of the Plaintiffs' Note and Mortgage failed to

19  adhere to section 2.01 of the PSA, which requires that Plaintiffs' Note and

20  Mortgage be properly endorsed, transferred, accepted, and deposited with the

21  Securitized Trust (or its custodian) on or before the "closing date" indicated on the

22  Prospectus 424B5 (See Exhibit D); the "closing date" is the date by which all the

23  Notes and Mortgages must be transferred into the "ABFC 2006-OPT1".  The

24

25  [8] Fractional banking is term used when the alleged Banks place 5% of their funds into the actual; funding
of the total loan and the remaining funds are provided by the Federal Reserve Bank through crediting the
26  borrowers account; "There is no doubt but what the law is that a national bank cannot lend its credit or
become an accommodation endorser"

27  [9] "A bank is not the holder in due course upon merely crediting the depositors account." *Bankers Trust v.*
*Nagler*, 23 A.D.2d 645, 257 N.Y.S.2d 298 (1965).

28

failure to do so results in the Note and Mortgage not being part the "ABFC 2006-OPT1", such that it is not a loan that either HOMEWARD AND/OR AHMSI or Wells can attempt to collect on.

31. On or about December 12, 2007, HOMEWARD and/or AHMSI caused a "Assignment of Deed of Trust" to WELLS acquired the interest in the Plaintiffs' Note and Mortgage, and that it had endorsed, transferred, and negotiated the Plaintiffs' Note to defendant WELLS **"For Valuable Consideration"**. In fact, no such transfer of interest took place, attached hereto is a true and correct copy of the "Assignment," executed on December 12, 2007. <u>Plaintiff specifically disputes the contents and the authenticity of this document</u>.

32. The Plaintiff alleges that the "Assignment" or "Assignments" that was/were executed after the closing date of the trust; The dubious "Assignment(s)" raises numerous red flags and further demonstrates that the Plaintiffs' Note and Mortgage were not deposited into the Trust by the closing date, and that the "Assignment(s)" was/were fabricated in attempt to "paper over" the fatal securitization defects.

33. The failure to deposit Plaintiffs' Note into the "ABFC 2006-OPT1" before the closing date is a violation of the PSA and New York Trust Law. Consequently, the "ABFC 2006-OPT1" trust cannot claim any legal or equitable right, title, or interest in the Plaintiffs' Note and Mortgage since Wells Fargo Bank (Wells) cannot take any action which is not authorized by the Securitization agreements that created and govern the "ABFC 2006-OPT1".

34. The Plaintiff does not allege or assert that he is a beneficiary or party to the PSA. Rather, Plaintiff alleges that the failure to securitize his Note makes it impossible for WELLS, "ABFC 2006-OPT1", and/or AHSMI to claim, allege or assert that it was assigned, transferred or granted Plaintiffs' Note or Mortgage, or any interest therein, in any manner whatsoever. Plaintiff also alleges that the

1  failure to securitize his Note and Mortgage has resulted in an unperfected lien that

2  defendants cannot enforce in any manner whatsoever[10].

3      35. The Plaintiff relied on AHSMI, Wells and Power Default

4  misrepresentation and has been damaged in the following ways:

5  (1) multiple parties may seek to enforce his alleged debt obligation against him;

6  (2) the title to his home has been clouded and rendered unmarketable (unless more

7  fraudulent actions are taken to show the foreclosure proceedings are proper and

8  legal), as any would-be buyer of the Plaintiffs' property will find themselves in

9  legal limbo, unable to know with any certainty whether they can safely buy the

10  Plaintiffs property or get title insurance; (3) he has been paying the wrong party for

11  an undetermined amount of time and overpaid in interest that was over calculated;

12  (4) he is unable to determine whether he sent his monthly mortgage payments to

13  the right party; (5) his credit worthiness has been destroyed due to the defendants

14  misreporting of alleged debts without proper standing; (6) he has expended

15  significant funds to cover the cost associated with processes involved and legal

16  fees.

17      36. In addition to seeking compensatory, consequential, punitive, and other

18  damages, Plaintiff seeks Declaratory Relief as to whether the Deed of Trust

19  (Mortgage) secures any, obligation of the Plaintiff in favor of defendants

20  HOMEWARD AND/OR AHMSI, WELLS and Power default, such that any of

21  them can collect Plaintiffs' mortgage payments, demand payment or engage in debt

22  collection activities.

23

24  [10] These allegations are identical to those brought by the Nevada Attorney General against Bank of America, BAC Home Loan Servicing, and Recontrust, in which Attorney General Catherine Cortez Masto alleges that these entities engaged in unlawful and deceptive practices by misrepresenting to homeowners that they had the authority to foreclose despite the fact that there were fatal deficiencies in transfers to the securitization Trusts. *State of Nevada vs. Bank of America et al.*, No. 3:11-cv-00135-RCJ, (C.D. Nev August 30, 2011). The AG concludes that, "[t]hese are not mere technicalities. The PSA's spelled out specific procedures in order to ensure a proper transfer, protect the Trusts as the holders in due course, and avoid subjecting the Trusts to taxation. In addition, borrowers need to know the actual holders of their mortgages so that, for example, they can investigate and assert available defenses in foreclosures, including that the agent of the trustee lacks authority or standing under the Note." *Id.* at ¶ 146.

25

26

27

28

## V: THE FABRICATED ASSIGNMENT OF DEED OF TRUST
## IS A FRAUDULENT LIEN THAT CONVEYED
## NO INTEREST TO WELLS FARGO BANK

37. On December 14, 2007, Option One and/or Wells Fargo Bank caused the "Assignment of Deed of Trust" to be recorded with the Los Angeles County Recorders' Office. The "Assignment" alleged **"For Value Received"** Wells Fargo Bank is granted, assigned, and transferred all beneficial interest in the Deed of Trust. The Plaintiff alleges that no such transfer ever occurred.

38. In fact, the alleged "Assignment" was fraudulently executed without Option One Mortgage Corporation's knowledge or authorization.

39. This was an intentional act undertaken by the defendants Option One, Wells, and/or HOMEWARD AND/OR AHMSI done knowingly with specific intent that the consequences of their actions be brought to fruition, which they have as evidenced by the instant debt collection activities.

40. The "Assignment" is a fraudulent lien claim, and the execution, filing, and recordation of the document was created for the purpose of facilitating and aiding and abetting the illegal, deceptive, and unlawful collection of the Plaintiffs' mortgage payments, as well as engaging in other wrongful debt collection activities.

41. The Plaintiff alleges that any amounts allegedly owed under the Note is subject to equitable offset by the actual, consequential, special, and punitive damages owed to the Plaintiff from defendants, which amount is currently unknown, but will be determined upon conducting discovery. Plaintiff believes that this amount will be in excess of the amount of his alleged obligation.

42. The defendants' attempts to assign or transfer a Deed of Trust by itself, does not allow enforcement of Plaintiffs' Note and Mortgage. As alleged in this complaint herein, Plaintiffs' Note and Mortgage were not properly negotiated, endorsed, and transferred to defendant WELLS FARGO BANK who seeks to

cause its purported authorized agent(s) defendant HOMEWARD AND/OR AHMSI, to collect mortgage payments and engage in other unlawful collection practices.

43. California Commercial Code section 3301 limits a negotiable instrument's enforcement to the following:

> "Person entitled to enforce" an instrument means(a)the holder of the instrument,(b) a nonholder in possession of the instrument who has the rights of a holder, or (c) a person not in possession of the instrument who is entitled to enforce the instruments pursuant to Section 3309 or subdivision (d) of Section 3418.  A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument.

44. The Plaintiff is informed and believes and alleges that none of the defendant's were/are present holders in due course of the Plaintiffs' Note such that they can enforce Plaintiffs' obligation and demand mortgage payments.

45. The Plaintiff is informed and believes and alleges that the defendant's were not, and are not, a nonholder in possession of the Plaintiffs' Note who has rights of the holder.

46. If there is a holder due in course of Plaintiffs' Note at issue, pursuant to California Commercial Code section 3301, et seq, and/ or the PSA, it is the entity that can establish a pecuniary, legal, and equitable interest in the property, and provide an unbroken chain of title to Plaintiffs' Note and Mortgage.[11]

---

[11] The testimony of Linda DeMartini, a 10-year litigation manager for Countrywide, in *In Re Kemp, Case No. 08-18700-JHW*, (Bankr. D. N.J. November 16, 2010)(for publication) exposed the shoddy handling of mortgage notes and deeds of trust of securitized mortgages required to perfect "holder in due course" status. In that case Linda DeMartini described how Countrywide failed to adhere to the most rudimentary of securitization procedures, such as transferring the original promissory note to the trusts that had purchased the loans, as required under the pooling and servicing agreement. Ms. DeMartini testified that it was standard practice for Countrywide to warehouse the original mortgage notes, which

47.  On information and belief, none of the defendant's were/are entitled to enforce the Plaintiff's Note pursuant to  § 3309 or subdivision (d) of § 3418

48.  The Plaintiff alleges that, prior to demanding mortgage payments from the Plaintiff, none of the defendants had, nor presently have, secured or unsecured legal, equitable, or pecuniary interest in Plaintiffs' Note and/or Deed of Trust as required under California law-irrespective of who is actually in physical possession of Plaintiffs' Note.

49.  The Plaintiff alleges that, on information and belief, Option One, HOMEWARD AND/OR AHMSI, Wells and/or its agents are fraudulently enforcing an alleged debt obligation in which they have no pecuniary, equitable or legal interest. Thus, the defendants conduct is part of a fraudulent debt collection scheme.

## VI: THE FABRICATED"SUBSTITUTION OF TRUSTEE" IS A FRAUDULENT DOCUMENT THAT CONVEYED NO AUTHORITY TO POWER DEFAULT SERVICES TO ACT AS TRUSTEE

50.  The Deed of Trust names "Premier Trust Deed Services, Inc." as Trustee.

51.  The Deed of Trust was allegedly assigned, on December 14, 2007 and August 16, 2010 to defendant WELLS the trustee of the trust for defendant ABFC

were stored in Simi Valley, California, despite securitization contracts that required the notes to be physically transferred to sponsors, trustee or custodians of the securitized trusts. The findings in court decisions all over the country, news stories, attorneys generals' complaints, and state and federal investigations reveal that business practices like Countrywide's were common place and, like Countrywide, most lenders failed to properly comply with protocols required to properly securitize mortgage loans. Ms. DeMartini's testimony has been corroborated by Abigail Field of CNN, who reviewed foreclosures filed in two New York counties between 2006 and 2010 in which Bank of New York was foreclosing on behalf of a Countrywide securitization trust, and found that none of the 104 loans that were examined were endorsed by Countrywide: " ..If the lack of endorsements on these notes is typical- and 104 out of 104 suggests it is - the problem occurs across Countrywide securities." *See* Abigail Field, *At Bank of America, More Incomplete Mortgage Docs raises More Questions*, Fort., (June 3, 2011). http://finance.fortune.cnn.com/2011/06/03/at-bank-of-america-moreincomplete-mortgage-docs-and-more-questions/.

2006-OPT1, same trust that was terminated and dissolved 3 years earlier. The alleged assignment(s) were filed and recorded over 3 and a half years from the dissolution of the trust and over 4 years from the closing time of the alleged trust. This "Assignment of Deed of Trust" was done illegally and fraudulently.

52. On April 18, 2011 defendant MERS caused a document to be recorded with the County of Los Angeles. The document under the heading of "Assignment of Deed of Trust", the alleged "Assignment" that defendant grants, assigns and transfers **"For Value Received"** "All beneficial interest under that certain Deed of Trust Dated 6/15/2006, executed by: Winston Reid and Diana Acosta Reid, Husband and Wife in Common; "Premier Trust Deed Services, Inc." as Trustee and recorded as official records in the County Recorder's Office of Los Angeles County, in the State of California ... " Together with Note or Notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Deed of Trust/Mortgage". The Plaintiff re-alleges that this document and all of its content are fraudulent and the Plaintiff questions the authenticity of this alleged "Assignment of Deed of Trust", this assignment was illegally done to show that defendant WELLS as the acting and legitimate Trustee of the Deed of Trust/Mortgage.

53. Furthermore the only document that governs the assignment of the Note and the Mortgage is the Deed of Trust, and as stipulated in Provision 24 of the Deed that governs the Substitution of Trustee. It provides in relevant part:

> **"Lender,** at its option, may from time to time appoint a
> successor trustee to any Trustee appointed hereunder by
> an instrument **executed and acknowledged by Lender**.....
> This procedure for substitution of trustee shall govern
> to the exclusion of all other provision for substitution."

54. In violation of Provision 24, and Cal. Civ. Code 2934(a), the lender party failed to file a valid Substitution of Trustee, substituting Power Default, as the new trustee. The Plaintiff alleges that there no recorded substitutions; even if

there was a substitution in place recorded , it would not be valid as the defendants WELLS, HOMEWARD and/or AHMSI were not the current "lender's" at the time of the execution of the substitutions.

55.   The Plaintiff alleges that the defendants recorded "Assignment of Deed of Trust", and "Substitution" claiming that as the present beneficiary, Option One desired to grant, assign, and transfer all beneficial interest to defendant WELLS for value received, the Plaintiffs re-allege that no such substitutions occurred.

56.   The "Substitution(s)", "Assignment of Deed of Trust" are fraudulent documents, and the executions, filings, and recordation of the documents were created for the purpose of facilitating and aiding and abetting the illegal, deceptive, and unlawful collection and attempts to collect on Plaintiffs' alleged debt obligations.

## VII: PLAINTIFF HAS SUFFERED, AND CONTINUES TO SUFFER, SIGNIFICANT MONETARY, LEGAL, AND EQUITABLE DAMAGES

57.   The conduct described above by HOMEWARD and/or AHMSI, WELLS or Power Default; is/was malicious because defendants knew that they were not acting on behalf of the current pecuniary beneficiary of the Note and Mortgage.  However, despite such knowledge, said defendants continued to demand and collect Plaintiff's mortgage payments.

58.   The defendants engaged and are engaging in a pattern of defrauding the Plaintiff, in that, on information and belief, during the entire life of the mortgage loan, defendants failed to properly credit payments made, incorrectly calculated interest on the accounts, and failed to accurately debit fees.

59.   On information and belief , at all times material, Homeward and/or Wells had and have knowledge that Plaintiffs' accounts were not accurate, but that Plaintiff would continue to make further payments based on defendants' inaccurate accounts.

60. On information and belief, Plaintiff made payments based on the improper, inaccurate, and fraudulent rep-presentations as to Plaintiffs' accounts.

61. As a direct and proximate result of the actions of the defendants set forth above, Plaintiff overpaid in interest.

62. As a direct and proximate result of the actions of the defendants set forth above, Plaintiffs' credit and credit score have been severely damaged. Specifically, because of the derogatory credit reporting on his credit report by Homeward and/or AHMSI the Plaintiff is unable to make use of his credit worthiness and to obtain any credit.

63. As a direct and proximate result of the actions of the defendants set forth above, the title to the Plaintiffs' property has been slandered, clouded, and its sale ability has been rendered unmarketable.

64. As a direct and proximate result of the actions of the defendants set forth above, Plaintiff does not know who the current beneficiary of his alleged Note and Mortgage actually is, such that she is now subject to "double financial jeopardy".

65. As a direct and proximate result of the actions of the defendants set forth above, *multiple* parties can attempt to enforce Plaintiffs' alleged debt obligations.

66. The conduct of Homeward and/or AHMSI, or Wells and one or more of the Doe defendants has led to the imminent loss of Plaintiffs' real property and pecuniary damages. The pecuniary damages include, but are not limited to, the cost of over calculation and overpayment of interest, the cost of repairing Plaintiffs' credit, the reduction and/or elimination of Plaintiffs' credit limits, the cost associated with removing the cloud from his property title and attorney's fees, in an amount to be proven at trial.

67. The conduct of Homeward and/or AHMSI, or Wells and one or more of the Doe defendants' conduct was malicious because defendants did not know the

identity of the current and true beneficiary of Plaintiff's Note and Deed of Trust, yet they intentionally and fraudulently covered up this defect by wrongfully recording a fraudulent Assignment, which would be enable them to **illegally and fraudulently** collect on Plaintiff's debt, and which in essence has rendered the title the property unmarketable.

68. The title to Plaintiff's property has been rendered unmarketable and unsalable because of the possibility of multiple claims made against Plaintiff's alleged debt obligation and the underlying security (the subject property). If the Assignment of the Deed of Trust are not cancelled and set aside, Plaintiff will be incurably prejudiced. Plaintiff will be denied the opportunity to identify and negotiate with his **true creditor** and exercise his right to verify and validate his alleged debt.

69. The Plaintiff has offered to and is ready, willing, and able to unconditionally tender to his alleged obligation[12].

## FIRST CAUSE OF ACTION - DECLARATORY RELIEF:
## TO DETERMINE STATUS OF DEFENDANTS'CLAIM
### [28 U.S.C. §§ 2201, 2202]

### [Against All Defendants and Doe Defendants]

70. The Plaintiff hereby incorporates by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

---

[12] Case law makes it clear that **Plaintiff is only required to allege a credible offer of tender,** not actually tender. *Alicia v. GE Money Bank*, No C 09-00091 SBA, 2009 WL 2136969 at *3 (N.D. Cal. July 16, 2009) (...debtor must allege a credible tender of the amount of the secured debt..."). Moreover, tender is *not* required when the owner's action attacks the validity of the underlying debt because the tender would constitute an affirmation of the debt. *Sacchi v. Mortgage Electronic Registration Systems, Inc.* No. CV 11-1658 AHM, 2011 WL 25330299 (C.D. Cal June 24, 2011), at *16 (emphasis added)(citing *Onofrio v. Rice*, 55 Cal. App. 4th 413, 424, (1997); Stockton v. Newman, 148 Cal. App. 2d 558, 564 (1957). See also, *Foulkord v. Wells Fargo Financial California Inc.*, No. CV 11-732-GHK (AJWx) (C.D. Cal May 31, 2011)("...requiring Plaintiff to tender the amount due on her loan at this time would be illogical and inequitable given that he disputes that Wells Fargo has any rights under the loan.") In light of the fact that Plaintiff contents the legitimacy of the Defendants' claim to the mortgage payments, it would be **illogical and inequitable** to require Plaintiff to actually tender the amount given that Plaintiff disputes whether Defendants have any rights under the loan. See *Onofrio v. Rice*, 55 Cal. App. 4th 413, 424 (1997).

71. Section 2201(a) of Title 28 of the United States Code states:

> In case of actual controversy within its jurisdiction, except with respect to Federal taxes other than actions brought under of the Internal Revenue Codeof 1986, a proceeding under section 505 or 1146 of title11, or in any civil action involving an antidumping or countervailing duty proceeding regarding a class or kind of merchandise of a free trade area country (as defined in section 516A(f)(10) of the Tariff Act of 1930), as determined by the administering authority, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether, or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

72. Section 2202 of Title 28 of the United States Code states:

> Further necessary or proper relief based on declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment.

73. Plaintiff alleges that neither WELLS, HOMEWARD and/or AHMSI have a secured or unsecured legal, equitable, or pecuniary interest in the lien evidenced by the Deed of Trust and that its purported assignments have no value since the Deed of Trust is wholly unsecured.

74. On or about June 15, 2006, the defendants claim they had secured enforceable interest in, and perfected lien against, the Plaintiffs' Note, Deed of Trust and Property.

75. Thus, the competing allegations made by Plaintiff above, establish that a real and actual controversy exists as to the respective rights of the parties to this matter, including ownership of the Property.

76. Accordingly, Plaintiff requests that the Court make a finding and issue appropriate orders stating the none of the named defendants or Doe defendants, have any right or interest in Plaintiff's Note, Deed of Trust, or the Property which authorizes them, in fact or as a matter of law, to collect Plaintiff's mortgage

payments or enforce the terms of the alleged Note or Deed of Trust in any manner whatsoever.

77. The Plaintiff will suffer prejudice if the Court does not determine the rights and obligations of the parties because: (1) Plaintiff will be denied the opportunity to identify his true and current creditor/lender and to negotiate with them; (2) he will be denied the right to conduct discovery and have WELLS, HOMEWARD and/or AHMSI and other defendants' claims verified by a custodian of records who has personal knowledge of the loan and all transactions related to it; and (3) he will be denied the opportunity to discover the true amount he still owes minus any legal costs, fees and charges.

78. Due to the actual case and controversy regarding competing claims and the allegations, it is necessary that the court declare the actual rights and obligations of the parties and make a determination as to whether WELLS, HOMEWARD and/or AHMSI and other defendants' claims against the Plaintiff is enforceable and whether it is secured or unsecured by any right, title, or interest in Plaintiffs' property.

79. Furthermore, the conduct of WELLS, HOMEWARD and/or AHMSI, and Power Default as their agent, and one or more of the Doe defendants, and each of them, as herein described, has been so malicious and contemptible that it would be looked down upon and despised by ordinary people. Plaintiff is therefore entitled to punitive damages in an amount appropriate to punish defendants and to deter others from engaging in similar conduct.

## SECOND CAUSE OF ACTION - NEGLIGENCE

### [Against All Defendants and Doe Defendants]

80. The Plaintiff hereby incorporates by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

81. At all times relevant herein, HOMEWARD and/or AHMSI was acting as a purported agent for WELLS. Defendants are jointly and severally liable for WELLS, HOMEWARD and/or AHMSI negligent and reckless conduct.

82. WELLS as the purported beneficiary of the Note and Deed of Trust, and HOMEWARD and/or AHMSI as purported mortgage servicer, all have a duty to exercise reasonable care[13] and skill to follow California Law with regard to enforcement of monetary obligations, and to refrain from taking or failing to take any action against Plaintiff that they did not have the legal authority to do. This includes not collecting or demanding mortgage payments when they do not have the right to enforce the obligation, causing the Plaintiff to overpay in interest, making derogatory credit reports to credit bureaus, and failing to keep an accurate accounting of Plaintiffs mortgage payments, credits, and debits (if Bank of America is in fact the legally authorized mortgage servicer for the Plaintiff).

83. WELLS, HOMEWARD and/or AHMSI have a duty to exercise reasonable care and skill to refrain from taking any action against Plaintiff that they do not have the legal authority to do. As a direct and proximate result of the reckless negligence, utter carelessness, and blatant fraud of the defendants as set forth above, the chain of title to Plaintiff's property has been rendered unmarketable and fatally defective and has caused Plaintiff to lose saleable title to the subject property.

84. WELLS, HOMEWARD and/or AHMSI breached that duty when they failed to follow the guidelines established in the PSA requiring the transfer of the Note and Deed of Trust into the ABFC 2006-OPT1 by the closing date.

---

[13] Normally lenders and servicers do not owe a borrower a duty of care. *Nymark v. Heart Fed. Savings & Loan Assn.*, 231 Cal. App. 3d 1089, 1093 (1991). However, a bank may be liable in negligence if it fails to discharge its contractual duties with reasonable care. *Das v. Bank of Am*, 186 Cal. App.4th 727, 741 (2010). Additionally, a bank may be liable for aiding and abetting a tort when it renders "substantial assistance" to a tortfeasor during a business transaction that it knowingly aided in the commission of the tort. *Id.* (citing *Casey v. U.S. Bank Nat. Assn.*, 127 Cal. App. 4th 1138, 1144-45).

85. As a direct and proximate result of the negligence and carelessness of the defendants as set forth above, Plaintiff suffered, and continues to suffer, general and special damages in an amount to be determined at trail, including attorneys' fees and costs of bringing suit to dispute, validate, and challenge said defendants' purported rights to enforce the Plaintiffs' alleged debt obligation.

## THIRD CAUSE OF ACTION - QUASI CONTRACT

### [Against All Defendants and Doe Defendants]

86. Plaintiff hereby incorporates by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

87. WELLS, HOMEWARD and/or AHMSI, demanded monthly mortgage payments from Plaintiff and continued to collect payments from Plaintiff. Plaintiff reasonably relied upon WELLS, HOMEWARD and/or AHMSI assertion that it/they are/were entitled to the benefit of Plaintiff's mortgage payments.

88. WELLS, HOMEWARD and/or AHMSI knowingly accepted payments and retained them for its own use knowing that WELLS, HOMEWARD and/or AHMSI did not acquire an interest in Plaintiff's Note, such that they could accept or keep Plaintiff's payments. It would be inequitable for WELLS, HOMEWARD and/or AHMSI to retain the payments it received from Plaintiff which it did not have legal authority to collect. The equitable remedy of restitution when unjust enrichment has occurred is an obligation created by the law without regard to the intention of the parties, and is designed to restore the aggrieved party to their former position by return of the thing or its equivalent in money.

89. Section 23 of the Deed of Trust states that: "Upon payment of all the sums secured by this Security Instrument, Lender shall request Trustee to re-convey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. "Trustee shall re-convey the Property without warranty to the person or persons legally entitled to it." The obligations to Option One Mortgage Corporation under the Deed of Trust

1  were fulfilled when Option One Mortgage Corporation received the balance on the

2  Note as proceeds of sale of Plaintiff's Note and Mortgage to a presently unknown

3  entity. WELLS, HOMEWARD and/or AHMSI have been unjustly enriched by

4  collecting monthly payments from Plaintiff when it has no interest in his Note.

5      90.  Plaintiff seeks restitution for any payments he made to WELLS,

6  HOMEWARD and/or AHMSI that were not paid to the lender or beneficiary, if

7  any.

## FOURTH CAUSE OF ACTION – VIOLATION OF 12 U.S.C. § 2605
## (RESPA)

### [Against All Defendants and Doe Defendants]

11     91.  Plaintiff hereby incorporates by reference each and every one of the

12  preceding paragraphs as if the same were fully set forth herein.

13     92.  The subject loan is a federally regulated mortgage loan and is subject to

14  the federal Real Estate Procedures Act (RESPA) and its implementing regulation,

15  Regulation X.

16     93.  On or about May 2010, Plaintiff sent a Qualified Written Requests to

17  defendants AHMSI a ("QWR").

18     94.  On information and/or belief and/or AHMSI received QWR on or about

19  May 2010.

20     95.  The QWR contained information to enable AHMSI to identify

21  Plaintiff's loan and also contained requests for information of the loan, specifically

22  the identity and contact information of the holder in due course of Plaintiff's Note,

23  accumulated late fees and charges, and requested information to verify the validity

24  of the purported debt owed to AHMSI.

25     96.  AHMSI did not provide the contact information for the purported holder

26  of the Plaintiffs' Note, as required by 12 U.S.C. § 2605, et seq. Instead, AHMSI

27  responded by providing a partial account history of Plaintiff's account. AHMSI

28

responses did not respond to Plaintiff's request and did not comply with the requirements of 12 U.S.C. § 2605, et seq.

97. Because the Mortgage Loan is subject to RESPA and Regulation X, all defendants were required to comply with Section 6 of RESPA appearing at 12 U.S.C. § 2605., defendant violated Section 6 of Regulation X upon receipt of Plaintiff's QWR by their actions including, but not limited to: (a) failure to make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of the correction; and (b) failure to protect Plaintiff's credit rating upon receipt of QWR by furnishing adverse information regarding payment to credit reporting agencies as defined in § 603 of the Fair Credit Reporting Act, 15 U.S.C. § 1681(a).

98. Thus, AHMSI violated 12 U.S.C. § 2605 and its subject to statutory damages, civil liability, penalties, attorneys' fees and actual damages. *See* 12 U.S.C. § 2605. The actual pecuniary damages include, but are not limited to, the over calculation and overpayment of interest on Plaintiff's loan, the costs of repairing Plaintiff's credit, the reduction and/or elimination of Plaintiff's credit limits, costs associated with removing the cloud on his property title and setting aside the trustee's sale, and attorneys' fees and costs, in an amount to be proven at trial, but in excess of $75,000.00.

99. As a direct and proximate result of the violations of RESPA and Regulation X by Bank of America, Plaintiff has suffered actual pecuniary damages, including but not limited to statutory damages, civil liability, and attorneys' fees, in an amount to be proven at trial.

## FIFTH CAUSE OF ACTION – FOR VIOLATION OF 15 U.S.C. § 1692, ET SEQ.

**[Against All Defendants and Doe Defendants]**

100. Plaintiff hereby incorporates by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

101. Federal law prohibits the use of any "any false, deceptive, or misleading representation or means in connection with the collection of any debt.........including the false representation of...the character, amount, or legal status of any debt...and the threat to take any action that cannot legally be taken..."

102. In illegally attempting to collect on Plaintiff's debt obligation in the manner described herein, defendants WELLS, as the purported assignee, and HOMEWARD and/or AHMSI as purported mortgage servicer:

    a) falsely represented the status of the debt, in particular, that it was due and owing to defendant WELLS, HOMEWARD and/or AHMSI at the time the suit was filed;

    b) falsely represented or implied that the debt was owing to defendant WELLS, HOMEWARD and/or AHMSI as an innocent purchaser for value, when in fact, such an assignment had not been accomplished;

    c) threatened to take action, namely engaging in collection activities that cannot legally be taken by them; and

    d) attempted to collect on the promissory note under false pretenses; namely that WELLS, HOMEWARD and/or AHMSI was assigned Plaintiff's debt when in fact they were not.

103. Illegally collecting on alleged debts that were in default. "The Senate report emphasized the application of this section 15 U.S.C. § 1692(a) §§ 4.3.10 to mortgage service companies and others who service outstanding debts for others, so long as the debts were not in default when taken for servicing. The defendants violated the statute by their alleged assignments being filed many months after the debt had been in default. The defendant's actions were illegal in their attempts to collect on the alleged debts as debt collectors claiming to be beneficiaries and

creditors of the alleged debt.  The defendants have misrepresented the "character, amount and the legal status of the alleged debt".

## SIXTH CAUSE OF ACTION – VIOLATION OF
## BUS. AND PROF. CODE SECTION 17200, ET SEQ.
### [Against All Defendants and Doe Defendants]

104.  Plaintiff hereby incorporates by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

105.  Defendants' conduct, for the reasons stated herein, is in direct violation of 12 U.S.C. § 2605(e), et seq.

106.  Defendants' conduct, for the reasons stated herein, is in direct violation of Cal. Penal Code section 532(f)(a)(4).

107.  Cal. Bus and Prof. Code section 17200, et seq., prohibits acts of unfair competition, which means and includes any unlawful, unfair, or fraudulent business act and conduct which is likely to deceive and is fraudulent in nature.

108.  As more fully described above, defendants' acts and practices are unlawful, unfair, and fraudulent. This conduct is ongoing and continues to this date.

109.  Defendants engage in unfair, unlawful[14], and fraudulent business practices with respect to mortgage loan servicing, and related matters by, among other things:

a) executing and recording false and misleading documents[15];

b) executing and recording documents without the legal authority to do so;

---

[14]  "Unlawful" acts or practices are those forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, or court-made. *Sanders v. Superior Court*, 27 Cal. 4th 832(1994); *Hewlett v. Squaw Valley*, 54 Cal. 4th 499 (1997).

[15]  Defendants' recording of the Assignment of Deed of Trust violates Cal. Penal Code section 532 (f)(a)(4), which prohibits any person from filing a document related to a mortgage loan transaction with the county recorder's office which that person knows to contain a deliberate misstatement, misrepresentation, or omission. The facts demonstrate that defendants have committed mortgage fraud by filing the Assignment of Deed of Trust with the county recorder's office with the knowledge that the document contained a deliberate misstatement, misrepresentation, or omission of fact.

c) failing to disclose the principal for which documents were being executed and recorded in violation of Cal. Civ. Code section 1095;

d) demanding and accepting payments for debts that were non-existent;

e) violating the Security First Rule;

f) reporting payments as late to credit bureaus without the legal right or authority to do so;

g) acting as beneficiary without the legal authority to do so

h) Initiating and foreclosing on the "Property" without having the proper lawful rights or legal standing, and;

i) other deceptive business practices as described herein.

110. As more fully described above, defendants' acts and practices are likely to deceive members of the public.

111. Plaintiff alleges that by engaging in the above described acts and/or practices as alleged herein; defendants violate several laws including Cal Bus. And Prof. Code section 17200, et seq. and must be required to disgorge all profits related to their unfair, unlawful, and deceptive business practices.

112. Plaintiff alleges that defendants' misconduct, as alleged herein, gave defendants an unfair competitive advantage over competitors. The scheme implemented by defendants is designed to defraud California consumers and enrich the defendants.

113. The foregoing acts and practices have caused substantial harm to California consumers, including Plaintiff.

114. By reason of the foregoing, defendants have been unjustly enriched and should be required to make restitution to Plaintiff and other California consumers who have been harmed, and/or be enjoined from continuing in such practices pursuant to Cal. Bus. and Prof. Code sections 17203 and 17204.

115. As a direct and proximate result of the actions of defendants, and each of them, stated above, Plaintiff has been injured in that a cloud has been placed

upon title to Plaintiff's property and defendants have failed to remove this cloud from Plaintiff's title.

116. Plaintiff is entitled to an order compelling WELLS, HOMEWARD and/or AHMSI, and any other defendants claiming an interest in and to the property to take any and all actions necessary to remove the cloud they have placed upon his title and to rescind the transfer of the "Property" to Wells Fargo Bank as the alleged purchaser of the property; in addition the Plaintiff is entitled to an order enjoining such defendants from taking such action again in the future.

## SEVENTH CAUSE OF ACTION - ACCOUNTING
### [Against All Defendants and Doe Defendants]

117. Plaintiff hereby incorporates by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

118. WELLS, HOMEWARD and/or AHMSI as its purported agent; have held themselves out to be Plaintiff's creditor and mortgage servicer. As a result of this purported relationship with Plaintiff, said defendants have a fiduciary duty to Plaintiff to properly account for payments made by Plaintiff.[16]

119. As a result of the aforementioned fraudulent conduct, Plaintiff paid WELLS, HOMEWARD and/or AHMSI, his mortgage payments for a period of approximately 2 and half years. However, for the reasons stated herein, none of this money was actually owed to WELLS, HOMEWARD and/or AHMSI. For that reason, these monies are due to be returned to Plaintiff in full.

120. The amount of the money due from defendants to Plaintiff is unknown to Plaintiff and cannot be ascertained without an accounting of the receipts and

---

[16] To state a cause of action for accounting, a Plaintiff must allege the existence of a fiduciary relationship, or accounts so complicated that an ordinary legal action demanding a fixed sum is impracticable. 5 Witkin, Cal. Proc. 4th (1997) Pleading, section 775, p. 233. The elements for a claim for accounting are: 1) fiduciary relationship or other circumstances appropriate to the remedy; and 2) a balance due from the defendant to the Plaintiff that can only be ascertained by an accounting. *See* Witkin, California Procedure, Pleadings, section 776, p. 233 (4th ed.)

disbursements of the aforementioned transactions. Plaintiff is informed and believes and thereon alleges that the amount due to him exceeds $75,000.00.

**WHEREFORE, Plaintiff prays as follows:**

1. For compensatory, special and general damages in an amount according to proof at trail, but not less than $3,400,000.00, against all defendants;

2. For punitive and exemplary damages in an amount to be determined by the Court against all defendants;

3. For an order compelling defendants to remove any instrument which does or could be construed as constituting a cloud upon Plaintiff's title to the property, including the purported Assignment of Deed of Trust;

4. For an order finding that defendants have no legally cognizable rights as to Plaintiff, the property, Plaintiff's Promissory Note, Plaintiff's Deed of Trust or any other matter based on contract or any of the documents prepared by defendants, tendered to and executed by Plaintiff;

5. For the Court to issue an order restraining defendants, their agents or employees from continuing or initiating any action against the Property and enjoining defendants, their agents or employees from doing so during the pendency of this matter;

6. For an order compelling defendants to disgorge all amounts wrongfully taken by them from Plaintiff and returning the same to Plaintiff's interest thereon at the statutory rate from the date the funds were first received from Plaintiff;

7. For costs of suit incurred herein;

8. For reasonable attorneys' fees incurred; and

9. For such other and further relief as the Court may deem proper.

## DEMAND FOR JURY TRIAL

The Plaintiff Winston Reid; hereby requests a jury trial on all issues raised in this complaint under the Seventh Amendment to the U.S Constitution in accordance with "Federal Rule of Civil Procedure 38."

Dated: __9-12-12__

Winston Reid,
Plaintiff in Pro Per
*Without Recourse*

*First Amended Complaint - 32*

## LIST OF EXHIBITS

Pursuant to *18 U.S.C. 1961(9),* Plaintiff now formally incorporates His *documentary material* by reference to all of the following Exhibits, as if set forth fully here, to wit:

Exhibit A - Assignment of Deed of Trust – 3 pages w/cover

Exhibit B - Termination of Trust: Form 15-15D - 4 pages w/cover

Exhibit C - Trust Prospectus: SEC Filing Form 424B5 - 8 pages w/cover


Total Exhibit pages attached – 15

## **VERIFICATION**

I, Winston Reid, Plaintiff in the above entitled action, hereby verify under penalty of perjury, under the laws of the United States of America, without the "United States" (federal government), that the above statement of facts and laws is true and correct, according to the best of my current information, knowledge, and belief, so help me God, pursuant to 28 U.S.C. 1746(1). See the Supremacy Clause in the Constitution for the United States of America, as lawfully amended (hereinafter "U.S. Constitution").

Dated: 9-12-12

Winston Reid,

# ACKNOWLEDGEMENT

State of California

County of ( Los Angeles                )

On   Sept. 12   2012          before me   Ron Rolek, Notary Public

Personally appeared      Winston Reid               , who proved to
me on the basis of satisfactory evidence to be the person(X) whose name(X) is / are
subscribed to the within instrument and acknowledgement to me that he / she / they
executed the same in his / her / their authorized capacity (ies), and that by his / her
/ their signatures(X) on the instrument the person(X), or the entity upon behalf of
which the person(X) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the state of California
that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

RON ROLEK
NOTARY PUBLIC - CALIFORNIA
COMMISSION # 1980614
LOS ANGELES COUNTY
My Comm. Exp. June 2, 2016

First Amended Complaint - 35

# EXHIBIT "A"

36

 **This page is part of your document - DO NOT DISCARD** 



**20072750195**   Pages: 002

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**12/14/07 AT 08:00AM**

Fee: 9.00
Tax: 0.00
Other: 0.00
Total: 9.00

**Title Company**

# TITLE(S) :



L E A D   S H E E T

**Assessor's Identification Number (AIN)**
To be completed by Examiner OR Title Company in black ink.     **Number of AIN's Shown**

 E400677     **THIS FORM IS NOT TO BE DUPLICATED**

37

Recording requested by

When recorded mail to

Option One Mortgage Corporation
6501 Irvine Center Drive
Mail Stop  DA-AM
Irvine, CA 92618

12/14/07



**20072750195**

---

Space above this line for recorders use

TS # CA-07-113151-SH              Order # G735537

Loan # 0021771290
Investor No 661016770

## Assignment of Deed of Trust

For value received, the undersigned corporation hereby grants, assigns, and transfers to

**Wells Fargo Bank, N.A., as Trustee for ABFC 2006-OPT1 Trust, ABFC Asset-Backed Certificates, Series 2006-OPT1.**

all beneficial interest under that certain Deed of Trust dated **6/15/2006** executed by **WINSTON REID AND DIANA ACOSTA REID, HUSBAND AND WIFE IN COMMON,** as Trustor(s) to **PREMIER TRUST DEED SERVICES, INC.,** as Trustee and recorded as Instrument No **2006-1380876,** on **6/23/2006,** in Book xxx, Page xxx of Official Records, in the office of the County Recorder of **LOS ANGELES County, CA** together with the Promissory Note secured by said Deed of Trust and also all rights accrued or to accrue under said Deed of Trust

Dated   11/16/2007 1 44 PM

**Option One Mortgage Corporation, A California Corporation By Its Attorney-In-Fact Quality Loan Service Corp**

By  Debra Dente, Assistant Vice President

State of   CA                    )
                                 ) ss
County of  San Diego             )

On 12/11/2007 before me, M C Aquiningoc the undersigned Notary Public, personally appeared Debra Dente personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument

WITNESS my hand and official seal

Signature _____ (Seal)
M.C. Aquiningoc, Notary Public

**M.C. AQUININGOC**
COMM #1535187
NOTARY PUBLIC • CALIFORNIA
SAN DIEGO COUNTY
Commission Expires Dec 16, 2008

3B

# EXHIBIT "B"

39

# ABFC 2006-OPT1 Trust · 15-15D · On 1/25/07

**Filed On 1/25/07 3:16pm ET · SEC File 333-130524-02 · Accession Number 1056404-7-589**

**Notice of Suspension of Duty to File Reports · Form 15**

UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
WASHINGTON, D.C. 20549

FORM 15

Certification and Notice of Termination of Registration under Section
12(g) of the Securities Exchange Act of 1934 or Suspension of Duty to
File Reports under Sections 13 and 15(d) of the Securities Exchange Act
of 1934.

Commission File Number of issuing entity: 333-130524-02

ABFC 2006-OPT1 Trust
(Exact name of issuing entity as specified in its charter)

Commission File Number of depositor: 333-130524

Asset Backed Funding Corporation
(Exact name of depositor as specified in its charter)

Bank of America, National Association
(Exact name of sponsor as specified in its charter)

c/o Wells Fargo Bank, N.A.
9062 Old Annapolis Road
Columbia, MD 21045
(410) 884-2000

(Address, including zip code, and telephone number, including area code,
of Registrant's principal executive offices)

A-1

A-2

A-3A

A-3B

A-3C1

A-3C2

A-3D

B

CE

M-1

M-2

M-3

M-4

M-5

M-6

M-7

M-8

M-9

R

R-X

P

(Title of each class of securities covered by this Form)

None

(Titles of all other classes of securities for which a duty to file
reports under Section 13(a) or 15(d) remains)

Please place an X in the box(es) to designate the appropriate rule
provision(s) relied upon to terminate or suspend the duty to file reports:

Rule 12g-4(a)(1)(i)        / /

Rule 12g-4(a)(1)(ii)       / /

Rule 12g-4(a)(2)(i)        / /

Rule 12g-4(a)(2)(ii)       / /

Rule 12h-3(b)(1)(i)        / /

Rule 12h-3(b)(1)(ii)       / /

Rule 12h-3(b)(2)(i)        / /

Rule 12h-3(b)(2)(ii)       / /

Rule 15d-6                 /X/

Approximate number of holders of record as of the certification or notice
date:

Less than 300 Holders

Pursuant to the requirements of the Securities Exchange Act of 1934,

ABFC 2006-OPT1 Trust

has caused this certification/notice to be signed on its behalf by the
undersigned duly authorized person.

Date: January 19, 2007
By: /s/ *Daniel B. Goodwin*
Daniel B. Goodwin, President

Instruction: This form is required by Rules 12g-4, 12h-3 and 15d-6 of
the General Rules and Regulations under the Securities Exchange Act of
1934. The Registrant shall file with the Commission three copies of
Form 15, one of which shall be manually signed. It may be signed by an
officer of the Registrant, by counsel or by any other duly authorized
person. The name and title of the person signing the form shall be
typed or printed under the signature.

42

# EXHIBIT "C"

43

# Asset Backed Funding Corp, et al. · 424B5 · On 8/10/06

### Filed On 8/10/06 12:44pm ET · SEC Files 333-130524, -02 · Accession Number 950136-6-6572

#### Prospectus · Rule 424(b)(5)

As filed pursuant to rule 424(b)(5)

Registration No. 333-130524-02

PROSPECTUS SUPPLEMENT
(TO PROSPECTUS DATED FEBRUARY 16, 2006)

$1,026,972,000
(APPROXIMATE)
ASSET BACKED FUNDING CORPORATION
Depositor

ABFC 2006-OPT1 TRUST
Issuing Entity

BANK OF AMERICA, NATIONAL ASSOCIATION
Sponsor

**OPTION ONE MORTGAGE CORPORATION**
Servicer

ASSET BACKED FUNDING CORPORATION ASSET-BACKED CERTIFICATES, SERIES 2006-OPT1
PRINCIPAL AND INTEREST PAYABLE MONTHLY, COMMENCING IN AUGUST 2006

## SUMMARY OF PROSPECTUS SUPPLEMENT

Because this is a summary, it does not contain all the information that may be important to you. You should read the entire accompanying prospectus and this prospectus supplement carefully before you decide to purchase a certificate. If capitalized terms are not defined in this prospectus supplement, they are defined in the prospectus.

### ISSUING ENTITY

ABFC 2006-OPT1 Trust, a New York common law trust.

TITLE OF SERIES

Asset Backed Funding Corporation Asset-Backed Certificates, Series 2006-OPT1

### SPONSOR

Bank of America, National Association

### DEPOSITOR

Asset Backed Funding Corporation

### SERVICER

### Option One Mortgage Corporation

### ORIGINATORS

Option One Mortgage Corporation originated substantially all of the mortgage loans. One other originator originated one of the mortgage loans. Option One Mortgage Corporation and the other originator are each referred to herein as an "Originator."

### TRUSTEE

Wells Fargo Bank, N.A.

### CREDIT RISK MANAGER

Clayton Fixed Income Services Inc.

**SWAP PROVIDER**

Bank of America, National Association

**NIMS INSURER**

After the closing date, a separate entity may be established to issue net interest margin securities secured by all or a portion of the Class CE and Class P Certificates. Those net interest margin securities may or may not have the benefit of a financial guaranty insurance policy that guarantees payments on those securities. The insurer that would issue any financial guaranty insurance policy, if any, is referred to in this prospectus supplement as the "NIMS Insurer." The references to the NIMS Insurer in this prospectus supplement are applicable only if there is a NIMS Insurer.

**CLOSING DATE**

On or about August 10, 2006

**CUT-OFF DATE**

July 1, 2006

**SUBSEQUENT CUT-OFF DATE**

For group 3 mortgage loans to be purchased by the trustee on behalf of the trust on and after the closing date, the later of the first day of the month in which such purchase will take place and the origination date of such mortgage loan.

**DISTRIBUTION DATE**

The 25th day of each month (or if not a business day, the next business day) beginning in August, 2006.

**DETERMINATION DATE**

The 15th day of each month in which a distribution date occurs (or, if not a business day, the immediately preceding business day).

**RECORD DATE**

The business day immediately preceding a distribution date; provided, however, that if a certificate becomes a definitive certificate, the record date for that certificate will be the last business day

46

THE TRANSACTION PARTIES

Option One Mortgage Corporation originated substantially all of the mortgage loans and currently services all of the mortgage loans. Prior to the closing date, the sponsor purchased all of the mortgage loans from the originators. On the closing date (i) the sponsor will sell the initial mortgage loans to the depositor, who will in turn deposit them into a New York common law trust, which is the issuing entity and (ii) the depositor will transfer to the trustee funds to be held in a pre-funding account for the purpose of purchasing additional mortgage loans for loan group 3 as further described herein under "*Conveyance of Additional Group 3 Mortgage Loans and the Group 3 Pre-Funding Account.*" The trust will be formed by a pooling and servicing agreement, dated as of the cut-off date, among the depositor, the servicer and the trustee. The servicer will service the mortgage loans in accordance with the pooling and servicing agreement and provide the information to the trustee necessary for the trustee to calculate distributions and other information regarding the certificates.

The transfers of the mortgage loans from the sponsor to the depositor to the issuing entity in exchange for the certificates is illustrated below:



47

(1)  Initial mortgage loan transfers will occur on <u>August 10, 2006</u> and any additional group 3 mortgage loan transfers will occur by <u>August 30, 2006</u>.

(2)  The depositor will deposit $94,134,850 in the group 3 pre-funding account and such amount will be used to purchase additional group 3 mortgage loans.

## THE CERTIFICATES

A summary chart of the initial certificate principal balances, certificate interest rates, principal types, interest types, denominations, certificate forms, final scheduled distribution dates and ratings of the certificates is set forth in the table beginning on page S-6.

The certificates represent all of the beneficial ownership interest in the trust.

## CLASSIFICATIONS OF CLASSES OF CERTIFICATES

| | |
|---|---|
| **Offered Certificates:** | A-1, A-2, A-3A, A-3B, A-3C1, A-3C2, A-3D, M-1, M-2, M-3, M-4, M-5, M-6, M-7, M-8 and M-9 |
| Non-Offered Certificates | B, CE, P, R and R-**X** |
| Senior Certificates or Class A Certificates: | A-1, A-2, A-3A, A-3B, A-3C1, A-3C2 and A-3D |
| Subordinated Certificates: | M-1, M-2, M-3, M-4, M-5, M-6, M-7, M-8, M-9, B, CE, R and R-**X** |
| Class M Certificates: | M-1, M-2, M-3, M-4, M-5, M-6 , M-7, M-8 and M-9 |
| Class B Certificates: | B |
| Group 1 Certificates: | A-1 |
| Group 2 Certificates: | A-2 |
| Group 3 Certificates: | A-3A, A-3B, A-3C1, A-3C2 and A-3D |
| Residual Certificates: | R and R-**X** |

## THE MORTGAGE POOL

On the closing date, the issuing entity will acquire a pool of fixed and adjustable-rate first and second lien mortgage loans, designated herein as the "*initial mortgage loans.*" In addition, amounts on deposit in the group 3 pre-funding account described herein may be used to purchase additional mortgage loans for loan group 3 (referred to herein as "*additional group 3 mortgage loans*") during the period from the closing date up to and including August 30, 2006. Substantially all of the mortgage loans were originally originated or acquired by Option One Mortgage Corporation in accordance with the underwriting guidelines described under "*Underwriting Standards*" in this prospectus supplement.

For purposes of calculating principal and interest distributions on the senior certificates, the mortgage loans have been divided into three groups, designated as the "group 1 mortgage loans," the "group 2 mortgage loans" and the "group 3 mortgage loans." The group 1 mortgage loans consist only of those mortgage loans with original principal balances that conform to Fannie Mae guidelines. The group 2 mortgage loans consist only of those mortgage loans with original principal balances that conform to Freddie Mac guidelines. The group 3 mortgage loans consist of all other remaining mortgage loans, which may or may not have original principal balances conforming to Fannie Mae and/or Freddie Mac guidelines. Any additional group 3 mortgage loans included after the closing date will be fixed or adjustable-rate first or second-lien sub-prime mortgage loans that have original principal balances that may or may not conform to Fannie Mae and/or Freddie Mac guidelines. Other than certain cross-collateralization payments, the Group 1 Certificates generally represent interests in the group 1 mortgage loans, the Group 2 Certificates generally represent interests in the group 2 mortgage loans and the Group 3 Certificates generally represent interests in the group 3 mortgage loans. The remaining classes of certificates represent interests in all of the group 1 mortgage loans, the group 2 mortgage loans and the group 3 mortgage loans.

49

## THE POOLING AND SERVICING AGREEMENT

### GENERAL

The Certificates will be issued pursuant to the Pooling and Servicing Agreement, dated as of July 1, 2006 (the "POOLING AND SERVICING AGREEMENT"), among the Depositor, the Servicer and the Trustee. The "TRUST FUND" created under the Pooling and Servicing Agreement will consist of (i) all of the Depositor's right, title and interest in the Mortgage Loans, the related mortgage notes, mortgages and other related documents, (ii) all payments on or collections in respect of the Mortgage Loans due after the Cut-off Date, together with any proceeds thereof, (iii) any Mortgaged Properties acquired on behalf of Certificateholders by foreclosure or by deed in lieu of foreclosure, and any revenues received thereon, (iv) the Cap Carryover Reserve Account, (v) the Swap Account, (vi) the right to any Net Swap Payment and any Swap Termination Payment made by the Swap Provider and deposited into the Swap Account, (vii) the rights of the Trustee under all insurance policies required to be maintained pursuant to the Pooling and Servicing Agreement, (viii) the rights of the Trustee under the Interest Rate Swap Agreement, (xi) the rights of the Depositor under each Originator Mortgage Loan Purchase Agreement and the Mortgage Loan Purchase Agreements, (x) all of the Depositor's right, title and interest in any Additional Group 3 Mortgage Loan and any rights conveyed by the Depositor to the Trustee under any related Additional Transfer Instrument and (xi) the amount on deposit in the Group 3 Pre-Funding Account. The Offered Certificates will be transferable and exchangeable at the corporate trust office of the Trustee. The prospectus contains important additional information regarding the terms and conditions of the Pooling and Servicing Agreement.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Percy Anderson and the assigned discovery Magistrate Judge is Suzanne H. Segal.

The case number on all documents filed with the Court should read as follows:

## CV12- 7863 PA (SSx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

==========================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

[ ] **Western Division**
312 N. Spring St., Rm. G-8
Los Angeles, CA 90012

[ ] **Southern Division**
411 West Fourth St., Rm. 1-053
Santa Ana, CA 92701-4516

[ ] **Eastern Division**
3470 Twelfth St., Rm. 134
Riverside, CA 92501

Failure to file at the proper location will result in your documents being returned to you.

Name & Address:
Winston Reid, In Pro-Per
14361 Nordoff Street #B
Panorama City, CA 91402
Cell: (818) 921-5089

FOR OFFICE USE ONLY

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

WINSTON REID, as

**PLAINTIFF(S)**

v.

HOMEWARD RESIDENTIAL, F/K/A AMERICAN
HOME SERVICING, INC;
  "See Attached"

**DEFENDANT(S).**

CASE NUMBER

**CV12-7863** $PA(SSx)$

**SUMMONS**

FOR OFFICE USE ONLY

TO:   DEFENDANT(S):

    A lawsuit has been filed against you.

    Within   __21__   days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, __Winston Reid, in Pro Per_____, whose address is __14361 Nordoff Street #B, Panorama City, CA 91402_____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Dated: __9 – 12 – 12__

Clerk, U.S. District Court

By: _____

_(Seal of the Court)_

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

FOR OFFICE USE ONLY

CV-01A (10/11)                                  **SUMMONS**

## Attachment to Summons

 WELLS FARGO BANK, N.A.; ASSET BACKED FUNDING CORPORATION ASSET BACKED CERTIFICATES, SERIES 2006-OPT-1; POWER DEFAULT SERVICES, INC.;

and DOES 1 THROUGH 10 INCLUSIVE,

Defendants,

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☑)

WINSTON REID

**DEFENDANTS**

HOMEWARD RESIDENTIAL, F/K/A AMERICAN HOME SERVICING, INC;
"See Attached"

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

WINSTON REID          In Pro Per
14361 NORDOFF STREET #B
PANORAMA CITY, CA  91402          Cell: (818) 921-5089

Attorneys (If Known)

---

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☑ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

---

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☑ Yes   ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes   ☑ No          ☑ **MONEY DEMANDED IN COMPLAINT: $_____**

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
15 U.S.C §1692-1692p, et seq.,

---

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 540 Mandamus/Other | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 791 Empl. Ret. Inc. Security Act |
| ☑ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | **PROPERTY RIGHTS** |
| ☐ 490 Cable/Sat TV | | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | **FORFEITURE / PENALTY** | ☐ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 190 Other Contract | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | **SOCIAL SECURITY** |
| ☐ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | **REAL PROPERTY** | **IMMIGRATION** | | ☐ 640 R.R. & Truck | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | ☐ 463 Habeas Corpus-Alien Detainee | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | ☐ 465 Other Immigration Actions | | ☐ 690 Other | **FEDERAL TAX SUITS** |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

---

**CV12-7863**

**FOR OFFICE USE ONLY:**   Case Number: _____

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

CV-71 (05/08)          CIVIL COVER SHEET          Page 1 of 2

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply)    ☐ A. Arise from the same or closely related transactions, happenings, or events; or
☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐    Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County , California | |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐    Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | State of Delaware |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
    **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County , California | |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____    Date  9 - 12 - 12

**Notice to Counsel/Parties:**  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

<u>Attachment to Civil Cover Sheet</u>

WELLS FARGO BANK, N.A.; ASSET BACKED FUNDING CORPORATION
ASSET BACKED CERTIFICATES, SERIES 2006-OPT-1; POWER DEFAULT
SERVICES, INC.;

and DOES 1THROUGH 10 INCLUSIVE,

Defendants,

Attachment to Civil Cover Sheet - 1